IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2006 Session

## GALADRIEL BASHAM, INDIVIDUALLY AND AS NEXT-OF-KIN OF BABY GIRL BASHAM, DECEASED v. MARK K. GREAVES, M.D.

**Appeal from the Circuit Court for Davidson County**
**No. 00C-1558     Marietta M. Shipley, Judge**

---

**No. M2006-00281-COA-R3-CV - December 11, 2006**

---

In this medical malpractice action, the plaintiff contends the emergency room physician failed to comply with the applicable standard of care, which she contends is the standard for board-certified emergency room physicians, regardless of the locale in which the physician practices, and that the trial judge improperly instructed the jury concerning the applicable community. The novel issue presented is whether the term "community," as it applies to the so-called locality rule, can be construed to mean the medical community of specialists who are board-certified as emergency room physicians without regard to the geographic location of their practice. Although we find the issue intriguing, the facts of this case render the issue moot. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a concurring opinion.

W. Gary Blackburn, Nashville, Tennessee, for the appellant, Galadriel Basham, Individually and as next of kin to Baby Girl Basham, deceased.

Dale A. Tipps and Michael A. Geracioti, Nashville, Tennessee, for the appellee, Mark K. Greaves, M.D.

### OPINION

Galadriel Basham was riding in the passenger seat in a car driven by her husband when they were involved in a serious vehicular accident on June 5, 1999. At the time of the accident, Mrs. Basham was thirty-two weeks pregnant with the couple's child. Immediately following the accident, Mrs. Basham, who was experiencing abdominal pains, was taken by ambulance to Summit Medical Center for examination.

The baby's fetal heartbeat was immediately checked when Mrs. Basham arrived at the emergency room at Summit. The first reading indicated a heartbeat of 124 beats per minute, which

put the heartbeat of the fetus at the low end of the normal range, which was 120-160 beats per minute. Approximately one-half hour after her arrival at the emergency room, Mark K. Greaves, M.D., a board-certified emergency room physician, first examined Mrs. Basham. After his initial assessment, he ordered X-rays of Mrs. Basham's spine and knees. The record however fails to indicate any specific instructions relative to the health of the unborn child. It was not until approximately one hour and forty-five minutes after Mrs. Basham's arrival at the hospital that Dr. Greaves consulted with an obstetrician. Following that consultation, the obstetrician recommended delaying Mrs. Basham's discharge from the hospital so that she could have continuous fetal monitoring of the baby's heartbeat. As a consequence, and pursuant to the obstetrician's recommendation, Mrs. Basham was then taken to the obstetrical unit of the hospital. An ultrasound was performed, which indicated an absence of fetal cardiac activity. Thereafter, Mr. and Mrs. Basham were advised their child had died from an undiagnosed placental abruption.

In June of 2000, Mrs. Basham filed this action against Dr. Greaves. The matter was tried before a jury in October of 2005. During the trial, Mrs. Basham (hereinafter "the plaintiff") introduced expert testimony concerning the standard of care to be provided a pregnant woman who suffered abdominal trauma. The plaintiff's expert testified that all board-certified emergency room physicians studied from and were tested on the applicable protocol specified in a certain textbook. Dr. Greaves admitted that he and all other physicians seeking board certification as emergency room physicians studied from the same textbook. The protocol at issue emphasized the importance of four hours of continuous fetal monitoring when an expectant mother who was twenty weeks or more into her pregnancy, was subjected to trauma. Dr. Greaves' expert did not refute the so-called "national" protocol as discussed by the plaintiff's expert; nevertheless, he testified that the applicable standard of care in the Nashville area medical community was less stringent. He further opined that the treatment provided by Dr. Greaves complied with the applicable standard of care for the Nashville medical community.

At the close of all the proof, the trial judge invited the parties to submit requested jury instructions. The only instruction submitted by the plaintiff was the request that the jury be instructed in accordance with the locality rule set forth in Tenn. Code Ann. § 29-26-115(a)(1). The trial court complied with this request and instructed the jury as the plaintiff requested. Following deliberations, the jury returned a defendant's verdict, with a finding that Dr. Greaves "did not fail to comply with the recognized standard of care as it existed in Nashville, Tennessee, and similar communities."

The plaintiff filed a Motion for New Trial arguing that the jury should have been instructed to determine whether Dr. Greaves violated the "national standard of care" for medical treatment in this instance as the standard of care in this area is so well understood and universally recognized that all communities are "similar" to Nashville within the meaning of the law. The trial court denied the Motion. The plaintiff appeals challenging only the proper scope and application of the locality rule.

ANALYSIS

In a medical malpractice action, the plaintiff has the burden of proving "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices *in the community in which the defendant practices or in a similar community* at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115(a)(1) (emphasis added). Here, the plaintiff contends the applicable standard of care for Dr. Greaves is to be determined based upon the medical community of specialists who are board-certified as emergency room physicians without regard to the geographic location of their practice.

The plaintiff's argument can be summarized as follows. First, she contends that board-certified physicians are tested based upon national standards and obtain certification based upon the national standards for that specialty; therefore, a physician who represents that he or she is board-certified should be judged by the standard of care required by the certifying board. Based on this premise, the plaintiff contends that a board-certified physician should not be permitted to introduce evidence that he or she practices to a lesser standard of care than is customary for his or her "local" community. Essentially, the plaintiff contends the local community's standard of care is irrelevant when evaluating the performance of a board certified physician and, therefore, the jury should not be instructed or permitted to consider a lesser, local community standard of care.

The trial court permitted the plaintiff to submit requested jury instructions. The only instruction submitted by the plaintiff was the request that the jury be instructed in accordance with the locality rule set forth in Tenn. Code Ann. § 29-26-115(a)(1). The trial court complied with this request and instructed the jury as the plaintiff requested. After the jury was instructed, the plaintiff did not object to the instruction given or request a corrected instruction.

The Tennessee Rules of Civil Procedure address the rights and responsibilities of the parties as they pertain to erroneous instructions and omitted instructions. Specifically, Rule 51.02 provides:

> After the judge has instructed the jury, the parties shall be given opportunity to object, out of hearing of the jury, to the content of an instruction given or to failure to give a requested instruction, but failure to make objection shall not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial.

The instruction given to the jury came from the Tennessee Pattern Jury Instructions. Although the instruction given correctly states the law applicable to medical malpractice actions, the plaintiff contends a different instruction should have been given. Significantly, however, the plaintiff did not request the instruction until after the verdict was rendered.

We have concluded the plaintiff is not entitled to the relief sought. This is because a party has an obligation to aid the trial court, when such is reasonably available, to prevent the harmful effect of an omission in a jury charge. *See* Tenn. R. App. P. 36(a). Here, the plaintiff failed to take

action that was reasonably available to prevent or nullify the harmful effect of the alleged error. *Id*. Based upon the foregoing, we have concluded it would be inappropriate for us to opine on the issue of whether term "community" under Tenn. Code Ann. § 29-26-115(a)(1) can be interpreted as being limited to the community of board-certified emergency room physicians.[1]

The appellee insists the appeal is frivolous and requests damages. We do not find the appeal frivolous. The plaintiff acknowledged in her brief that this Court is bound by the precedent with regard to this issue; nevertheless, she seeks the opportunity to address the issue to the Supreme Court. Without perfecting an appeal to this Court, the plaintiff cannot speak to her intended audience. She is entitled to seek an extension or modification of the law. Accordingly, we do not find the appeal frivolous.

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[1] We are not unmindful of the fact the Tennessee Supreme Court has previously addressed the issue of a national standard of medical care for board-certified specialists. *See Robinson v. LeCorps M.D*. 83 S.W.3d 718 (Tenn. 2002). In *Robinson*, the Court specifically noted that the standard of care is "properly left to the discretion of the legislature." *Id*. at 724. Whether the reasoning and ruling in *Robinson* pertains to the meaning of the term "community" will have to be determined in another proceeding. It should also be noted that the Court has additionally stated in *Chapman v. Bearfield*, No. E2004-02596-SC-R11CV, 2006 WL 3162923, at *3 (Tenn. Nov. 6, 2006), that the legislature created the medical malpractice standard, and the courts are not at liberty to change that standard.